2002 ME 136

**STATE of Maine**

v.

**Frank ROBINSON.**

Supreme Judicial Court of Maine.

Argued: May 7, 2002.

Decided: Aug. 15, 2002.

Norman R. Croteau, District Attorney, Deborah Potter Cashman, Asst. Dist. Atty. (orally), Auburn, for State.

James P. Howanieac, (orally), Howanieac & Associates, P.A., Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Frank Robinson appeals from the judgment of conviction for gross sexual assault, 17–A M.R.S.A. § 253(1)(A) (Supp. 2001),[1] entered in the Superior Court (Androscoggin County, *Gorman, J.*) following a jury trial. Robinson contends that the court erred by excluding evidence, pursuant to Rules 412 and 403 of the Maine Rules of Evidence, that the victim had been sexually assaulted by another man prior to the sexual assault for which Robinson was charged. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The testimony presented at trial and the procedural history may be summarized as follows: Rebecca Brown spent the evening of March 27, 2000 drinking at a party held in her friends' apartment in Lewiston. She became extremely intoxicated while at the party and was possibly drugged without her knowledge. She remembered leaving the party by herself sometime before 1:00 a.m. Brown testified that the next thing she remembered was finding herself inside Robinson's apartment, also in Lewiston but across town from the location of the party, trying to unlock the door to get out. She did not know Robinson at the time, nor did she

---

1. The relevant portion of section 253(1)(A) provides:

   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

   A. The other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E . . . .

   17–A M.R.S.A. § 253(1)(A).

know how she ended up inside his apartment. She testified that Robinson prevented her from unlocking the door and then sexually assaulted her.

[¶ 3] Dr. Weincek, of the Central Maine Medical Center, examined Brown, took a blood sample, and collected a semen sample from her vagina and thigh. Brown reported the incident to an officer at the hospital and later went to the Lewiston Police Department to give a description of her assailant. She identified Robinson from a photo line-up.

[¶ 4] Robinson admitted to the investigating detective that Brown had been in his apartment on the night of the alleged assault, but he claimed that he had not touched her. Robinson consented to have a blood sample taken.

[¶ 5] Robinson was indicted on one count of gross sexual assault. Prior to trial, Robinson moved in limine to admit evidence of the fact that Brown had been sexually assaulted by her ex-boyfriend while at the party at her friends' apartment. Robinson asserted that the evidence of the prior sexual assault was relevant because the traumatic nature of the first assault established that Brown could not accurately recall the events of the second alleged assault, and the evidence established an alternative source for the semen found on Brown. The court denied the motion relying on Rules 412 and 403 of the Maine Rules of Evidence.

[¶ 6] At trial, however, Ivan Boudreau, the evidence and property manager of the Lewiston Police Department, testified in response to a question by the State that he had transported two blood samples, not including Brown's blood sample, to the State Police Crime Laboratory in Augusta. Robinson's attorney insisted that this testimony opened the door for the admission of evidence relating to Brown's past sexual behavior. After considerable discussion out of the presence of the jury, the court determined that the best way to explain why two blood samples, not one, were transported for analysis was to allow a State's witness to explain that there was a second blood sample for another individual who was a possible source of the semen. The court, however, did not agree that the testimony had opened the door for admission of the details of the prior rape. Based on the court's revised ruling, the State asked Detective Theiss, the investigating officer, whether Brown may have had sexual contact with someone other than Robinson:

Q. As part of your investigation did you learn that Miss Brown may have had sexual contact with someone other than Mr. Robinson in the 12 hours preceding her reported assault?

A. Yes.

Q. And based on that information did your investigation lead you to require another blood sample?

A. Yes.

Q And who did you get that blood sample from?

A. [Brown's ex-boyfriend].

Q. And that was the sample collected in the same fashion that you collected [Robinson's sample]?

A. Yes.

[¶ 7] Teresa Calicchio, a forensic DNA analyst for the Maine State Police Crime Laboratory, compared the DNA extracted from the semen sample with DNA extracted from three separate blood samples taken from Robinson, Brown, and Brown's ex-boyfriend. Calicchio testified that the predominant DNA profile obtained from the semen sample matched Robinson's blood sample and that the minor DNA profile matched Brown's profile. She testified that the ex-boyfriend's DNA profile did not match the profiles taken from the se-

men sample. Calicchio testified that the probability that the semen came from someone other than Robinson was one in 392 trillion.

[¶ 8] In his closing argument, Robinson argued, among other things, that his blood sample may have been mistakenly switched with the blood sample taken from Brown's ex-boyfriend. The jury returned a guilty verdict, however, and the court entered judgment on the verdict.[2] Robinson then timely filed the present appeal.

## II. ISSUE

[¶ 9] The issue presented is whether the court erred in applying Rules 412 and 403 of the Maine Rules of Evidence so as to exclude evidence of the details of the first sexual assault against the victim when offered to establish (1) that the victim could not accurately recall the events of the second sexual assault and (2) an alternative source for the semen found on the victim.

## III. DISCUSSION

[¶ 10] Rule 412 of the Maine Rules of Evidence provides:

(a) In a civil or criminal case in which a person is accused of sexual misconduct toward an individual, reputation or opinion evidence of past sexual behavior of the alleged victim of such misconduct is not admissible.

(b) In a criminal case in which a person is accused of sexual misconduct toward a victim the only evidence of the alleged victim's past sexual behavior that may be admitted is the following:

(1) Evidence, other than reputation or opinion evidence, of sexual behavior with persons other than the accused, offered by the accused upon the issue of wheth-

er the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(2) Evidence, other than reputation or opinion evidence, of sexual behavior with the accused offered by the accused on the issue of whether the alleged victim consented to the sexual behavior with respect to which the accused is charged.

(3) Evidence the exclusion of which would violate the constitutional rights of the defendant.

M.R. Evid. 412(a), (b). Evidence admissible pursuant to Rule 412(b) may, nonetheless, be excluded pursuant to Rule 403 of the Maine Rules of Evidence. M.R. Evid. 412 advisory committee's notes to 1983 amend., Me. Rptr., 449–458 A.2d LXX. Rule 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R. Evid. 403.

[¶ 11] Robinson contends that evidence relating to the first sexual assault is relevant, in the present case, because it raises "serious questions about [the victim's] stability, state of mind and credibility on the night in question." Specifically, he asserts that the jury should have been permitted to hear the evidence because the trauma associated with the first rape may have affected Brown's ability to accurately recall the details of her encounter with him. For purposes of Rule 412, his challenge asserts, in substance, that the evidence is the kind "the exclusion of which would violate [his] constitutional rights." M.R. Evid. 412(b)(3). Robinson also con-

---

**2.** The court sentenced Robinson to eleven years in prison, with all but eight years suspended, and six years of probation.

tends that the exclusion of the evidence prevented him from presenting another possible source of the semen to the jury. We review the exclusion of evidence under Rule 412 for abuse of discretion and for clear error, *see State v. Almurshidy,* 1999 ME 97, ¶ 25, 732 A.2d 280, 287, and we review the trial court's determination of the admissibility of evidence pursuant to Rule 403 for an abuse of discretion. *State v. Kalex,* 2002 ME 26, ¶ 10, 789 A.2d 1286, 1289.

A. Evidence Relating to Victim's Ability to Accurately Recall Events

[¶ 12] The purpose of Rule 412 of the Maine Rules of Evidence is to "protect[ ] the State's strong and legitimate interest in preventing a trial from becoming a trial of the victim, rather than of the accused." *State v. Warren,* 1998 ME 136, ¶ 9, 711 A.2d 851, 855. This interest, however, "'is neither absolute nor paramount,'" *id.* (quoting *State v. Jacques,* 558 A.2d 706, 707 (Me.1989)), and it must yield when it conflicts with a defendant's constitutional rights. *See* M.R. Evid. 412(b)(3).

[¶ 13] The Confrontation Clause of the Sixth Amendment establishes a defendant's right to conduct "reasonable" or "'otherwise appropriate'" cross-examination to expose facts from which jurors could appropriately draw inferences relating to a witness's reliability. *Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Accordingly, a defendant has a constitutional right, subject to the reasonable application of Rule 403, to introduce evidence of a victim witness's past sexual behavior to expose a possible motive to lie. *See id.* at 230–31, 109 S.Ct. 480. Similarly, we have held that a defendant has a constitutional right to present evidence otherwise barred by

Rule 412 to rebut the presumption of a victim's sexual naivete. *Jacques,* 558 A.2d at 708. We also allow the admission of such evidence when the prosecution has "opened the door" by offering evidence of the victim's chastity, *State v. Leonard,* 513 A.2d 1352, 1355 (Me.1986), and when a statement by the victim about past sexual conduct is relevant for impeachment, *Almurshidy,* 1999 ME 97, ¶ 25, 732 A.2d at 287; *see generally* M.R. Evid. 412 advisory committee's notes to 1983 amend., Me. Rptr., 449–458 A.2d LXXI (recognizing that rule does not prohibit evidence when presented for impeachment or when prosecution "opens the door"). Each of these exceptions to the general prohibitions of Rule 412 stem from a defendant's constitutional right to effectively cross-examine and to present a proper defense. *See generally Jacques,* 558 A.2d at 708 (recognizing "defendant's constitutional right of effective cross-examination and to present a proper defense").

[¶ 14] In the present case, Robinson offered evidence relating to the first sexual assault to challenge the victim's "stability, state of mind and credibility on the night in question" because "[p]ossible trauma caused by the first assault may have impaired her ability to recall the details of the second assault." This is the kind of evidence that would enable the jury to draw a proper inference relating to the credibility of the victim's testimony because it bears upon her ability to accurately perceive the events she related. Automatic exclusion of such evidence would violate the defendant's right to present a proper defense, and, thus, the evidence is admissible under Rule 412(b)(3).

[¶ 15] Nonetheless, the court acted within its discretion by excluding the evidence, when offered for this purpose, pursuant to Rule 403. "'[T]he Sixth Amendment does not confer the right to

present testimony free from the legitimate demands of the adversarial system.'" *Michigan v. Lucas,* 500 U.S. 145, 152, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). "'[T]rial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Lucas,* 500 U.S. at 149, 111 S.Ct. 1743 (quoting *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431). In the present case, the probative value of the evidence relating to the effect that the prior rape may have had on the victim's ability to recall the events of the evening was insubstantial because she otherwise testified at the trial that she was extremely drunk and possibly drugged to the point that she could not remember much of what happened after she left her friends' party. She also testified that she could not remember how she had made her way across town on foot and arrived at Robinson's apartment. The court acted within its discretion in concluding that the probative value of the details of the first rape on the issue of the victim's ability to accurately recall subsequent events was outweighed by the danger of confusion of the issues and undue delay resulting from a trial within a trial as to what occurred at the party and that, more generally, the evidence was cumulative. *See* M.R. Evid. 403.

### B. Evidence Relating to Alternative Source of Semen

[¶ 16] Robinson also contends that the court erred by excluding the evidence because the exclusion prevented him from presenting to the jury another possible source of semen. Specifically, Robinson sought to admit evidence of the prior sexual assault in support of his theory that his blood sample had been mistakenly switched with the blood sample of Brown's ex-boyfriend. The court excluded this evidence in its entirety in ruling on Robinson's motion in limine, but subsequently revised the ruling after Ivan Boudreau testified to having obtained and transported two blood sample kits. As a consequence, the jury learned that Brown "may have had sexual contact" with her ex-boyfriend in the twelve hours preceding her reported assault by Robinson and that the authorities had taken and analyzed blood samples from both the ex-boyfriend and Robinson. The court rejected Robinson's argument, however, that Boudreau's testimony regarding the existence of two blood samples had opened the door to the admission of the details of the prior rape.

[¶ 17] The court's original reliance on Rule 412 as part of its rationale for wholly excluding evidence of the prior rape, when offered for the purpose of showing that the accused was not the source of the semen, was misplaced because that rule explicitly states that such evidence is admissible. *See* M.R. Evid. 412(b)(1) ("Evidence, other than reputation or opinion evidence, of sexual behavior with persons other than the accused, [may be admitted when] offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury."). The court nonetheless acted within the discretion afforded by Rule 403 by only admitting evidence that Brown may have had sexual relations with her ex-boyfriend, who provided a blood sample for testing, and otherwise excluding the details of the assault. The court's revised ruling provided Robinson a factual basis upon which to argue that the blood samples may have been switched. In fact, Robinson presented this theory to the jury as part of his closing argument. The de-

tails of the first sexual assault—that it was in fact a violent rape that occurred at the party approximately two hours before the second sexual assault—had no bearing on whether Robinson's and the ex-boyfriend's blood samples had been switched.

[¶ 18] Because the details of the first sexual assault had little or no probative value on the issue of the handling and transport of the blood samples, but may have confused the issues, misled the jury or wasted the jury's time by generating a trial within a trial as to what actually occurred at the party, the Superior Court acted within its discretion in excluding the evidence pursuant to Rule 403.

The entry is:

Judgment affirmed.